HOLLANDER *v.* BAIZ, Consul General.[1]

*(District Court, S. D. New York.* February 10, 1890.)

AMBASSADORS AND CONSULS—ACTIONS—JURISDICTION—"PUBLIC MINISTER"—REV. ST. § 687—OFFICER IN CHARGE OF LEGATION.

The defendant, being sued as consul in the district court, pleaded that he was a public minister of Central America, and as such suable only in the supreme court, under section 687, Rev. St., and moved, upon affidavits and certified papers, to dismiss the cause before trial. The defendant was an American citizen; and, upon leave of absence of the minister from Central America, the latter arranged with our department of state to receive through the consul any communication of which he might be made the channel. The defendant was never presented as a diplomatic officer, nor does his name appear as such on the official record, nor was he ever addressed by any diplomatic title of office named in section 1674, subd. 5, though he was twice addressed by our department of state as "in charge of the legation," and received two notices usually given to diplomatic officers. No certificate from the department of state was produced by either side as to the *status* of the defendant. *Held,* (1) that the cause could not be dismissed on motion, except on incontrovertible evidence that the defendant was a public minister, and that the evidence produced was not of that character; (2) that a "public minister" was a person invested with "the principal diplomatic functions" (section 4130) under one of the eight titles of office named in section 1674, subd. 5, and that the papers submitted did not warrant the inference that the defendant was made, or intended to be made, *chargé d'affaires ad interim,* or other diplomatic officer; (3) that there was no evidence of intention to waive jurisdiction of the defendant as an American citizen. And upon these grounds, *held,* that the defendant was not entitled to the immunities of sections 687, 4063, and the motion was denied.

At Law. Motion to dismiss for want of jurisdiction.

*R. D. Benedict,* for plaintiff.

*Billings & Cardozo,* (*Joseph H. Choate,* of counsel,) for defendant.

BROWN, J. The defendant, being sued as consul on July 2, 1889, for alleged libel on the plaintiff, pleaded, among other defenses, that from on or about January 16, 1889, to July 10, 1889, he was the "acting minister, and sole representative," of Guatemala, and "exclusively in charge of the diplomatic affairs of that republic in the United States," and that this court has no jurisdiction of this action. It is now moved, before trial, to dismiss the action, for want of jurisdiction, upon affidavits accompanied by certified copies of various letters from the departments of state, which it is claimed show incontrovertibly that the defendant, at the time when process was served on him, was a "public minister,"

[1] On a subsequent application by the defendant to the supreme court for a writ prohibiting the district court from proceeding further with the cause for want of jurisdiction, the application was denied on the merits. See In re Baiz, 10 Sup. Ct. Rep. 854.

against whom, under section 687 of the United States Revised Statutes, no suit could be brought except in the supreme court.

The papers submitted show that on January 6, 1889, Mr. Lainfiesta, then minister from Guatemala, Salvador, and Honduras to this country, being about to depart on leave of absence, addressed a note to Mr. Bayard, secretary of state, stating that fact, and asking him "to please allow that the consul general of Guatemala, Salvador, and Honduras, in New York, Mr. Jacob Baiz, should communicate to the office of the secretary of state any matter whatever relating to the peace of Central America that may be of sufficient importance to be brought without delay to the notice" of the department. On January 24, 1889, the secretary of state addressed a note to Mr. Baiz, as consul general, reciting Mr. Lainfiesta's intended departure and request, as above stated, and added:

"The secretary of state will have pleasure in receiving any communication in relation to Central America of which you may be made the channel, as intimated by Senor Lainfiesta."

On March 6, 1889, notice of Mr. Blaine's appointment as secretary of state was sent to Mr. Baiz, who was then addressed as "in charge of the legations of Guatemala, Salvador, and Honduras." Such notices, it is said, are never given to any but diplomatic officers. On April 1, 1889, he was addressed in the same style in a note from the secretary stating the appointment of Mr. Mizner as an envoy, etc., to Guatemala, Salvador, and Honduras, in place of Mr. Hall, recalled, and desiring Mr. Baiz to apprise those governments of the appointment. In six other communications from the state department, Mr. Baiz was addressed as "consul general," and in his notes to the department relative to diplomatic matters Mr. Baiz used only the title of consul general; and by the same title only was he addressed by his own government. In the Official Circular, corrected to June 13, 1889, concerning the foreign legations, the absence of Mr. Lainfiesta is mentioned. A foot-note reads: "Jacob Baiz, consul general, in charge of business of legation, New York." This circular states the names of the diplomatic officers from each country, with the dates of their presentation. It is from such dates that their official relation is recognized. Mr. Baiz's name does not appear in this list, and it does not appear that he was ever "presented." *Attaches* and secretaries of legation appear in this list, with the dates of their presentation. A letter from the department of state to the plaintiff's attorney, dated October 4, 1889, signed by the second assistant secretary, states that during the absence of Mr. Lainfiesta "the business of the legation was conducted by Consul General Baiz, but without diplomatic character." Since that letter, both sides have sought to obtain from the state department an official certificate of the *status* of Mr. Baiz. It has declined to furnish more than a *resume* of the facts.

1. To authorize me to dismiss the cause on this motion, it must appear by evidence that could not be overcome at the trial that the defendant was a "public minister," within section 687. There are but two kinds of direct evidence, that occur to me, which could be of this conclusive character, viz.: *First*, a certificate of the secretary of state that

the defendant was a public minister, received as such, and exercising such functions; or, *second*, proof of the exercise by the defendant of "the principal diplomatic functions" under some one of the titles of diplomatic office as recognized by our statutes and the law of nations.    In this case we have neither.    In the absence of such direct evidence, I am asked to draw a conclusive inference that the defendant was a public minister from a variety of circumstances presented by the affidavits. Those circumstances, as above recited, are diverse, and tend in some measure to opposite conclusions, while the best evidence is not yet forthcoming, but may be produced at the trial, with other evidence which the affidavits show to exist, but which could not be obtained for use on this motion.    Considering that the question whether the defendant was a "public minister" or not is an issue of fact raised by the pleadings, which must ordinarily be tried by a jury, and that the defendant cannot, against his objection, be required to produce his counter-evidence on a motion like this, instead of at the trial, I am satisfied that it would be error to decide that issue on this motion, in the absence of the highest and most unimpeachable evidence, upon mere inference drawn from circumstances that at best are diverse and incomplete, and might be rebutted at the trial.

2. But upon the evidence submitted I am not at all clear that the proper inference would be that the defendant was a "public minister," within section 687.    That section must be construed with reference to other sections of the Revised Statutes, *in pari materia*.    Section 687 manifestly refers to the same "public ministers" as section 4063, and is therefore limited by sections 4130 and 1674.    Section 4130 says that "the word 'minister'  *  *  *  shall be understood to mean the person invested with and exercising the principal diplomatic functions." Section 1674, subd. 5, says "diplomatic officer" shall be deemed to include "ambassadors,  *  *  *  *charges d'affaires*, agents and secretaries of legation, and none others."    For the defendant, it is urged that he was *charge d'affaires ad interim*.    The latter officer, appointed as such by a retiring minister, and duly recognized as such, though of lower rank than a *charge d'affaires* accredited by his sovereign, is entitled, I have no doubt, to the immunities of the statute, because invested with and exercising *ad interim* "the principal diplomatic functions."    Section 4130.    The term *"charge d'affaires"* is a distinctive title of office,—a diplomatic title in universal use long before our statutes were passed.    Had Mr. Baiz been appointed, presented, and received under the title of office of *"charge d'affaires ad interim,"* no question would remain.    But he was not appointed or received under that title, or under any other diplomatic title of office.    He was never addressed by any such title, either by our government or by his own.    Considering the high prerogatives of diplomatic officers, the extraordinary immunities accorded them, and the questions of rank and precedence within the corps, it is manifest that the title of office under which each is accredited and received is of the utmost importance.    The title is the distinguishing mark both of the office and of the officer.    Without the title, neither the office nor

the official character can properly be said to exist. It is equally important that such high immunities should not rest upon any doubtful claim, or be attached to any equivocal position. These immunities are not a mere personal privilege. They are attached to the office, as representing the foreign sovereignty. *Davis* v. *Packard*, 7 Pet. 276, 284. Without the office, therefore, they do not exist; nor can a foreign state justly claim that a person represents its sovereignty, or is entitled to the immunity of such representation, unless he is appointed to some appropriate and recognized title of office to which that immunity belongs, nor unless he is duly accredited and received as such. The statute confines it to persons invested with "the principal diplomatic functions," *i. e.*, to those having the full ordinary diplomatic powers; and section 1674 declares that "diplomatic officer" means one of the eight kinds therein named by their titles, and no others.

Next in importance to the absence of any official diplomatic title is the question of the intent. If the intent were clear that Mr. Baiz should hold and exercise one of the recognized diplomatic offices, any mere informality in his appointment might be disregarded. The letters of Mr. Lainfiesta and Mr. Bayard of January 16th and 24th, respectively, are of chief importance on this point. But I find it difficult to suppose that Mr. Lainfiesta would have employed any such language as "please allow the consul general, Mr. Baiz, to communicate any matter that should be presented without delay," had he designed to appoint Mr. Baiz to the office of *charge d'affaires ad interim*, or as agent or secretary of legation; or that the secretary could have supposed he was accepting a *charge d'affaires* when he wrote Mr. Baiz, as consul general, saying he "would receive any communication in relation to Central America of which he might be made the channel." The language employed by each, and the absence of any diplomatic title, seem to me to indicate strongly that no appointment of Mr. Baiz to any recognized diplomatic office was intended by either; and that the common intent was to make him, by courtesy, merely a channel of any necessary communication, in the absence of any diplomatic officer. In this view, the use, in two communications out of eight to Mr. Baiz from the department of state, of words describing him as "in charge of the legation," is of no importance. The similarity in literal meaning between those English words and the French words "*charge d'affaires*" has no significance. The difference between them is all important, in that the latter are the title of a diplomatic office, and the former are not. To appoint a person chief bridge-builder could not be understood as intended to invest him with the ecclesiastical functions of the "*Pontifex Maximus*." The address to Mr. Baiz as "in charge of the legation," in no way added to or changed his official relation, or his immunity from suit or arrest. He had charge of the legation *ad interim*, not as a diplomatic officer, but as custodian, through whom it was by courtesy arranged that necessary communications might be sent. It was appropriate, therefore, that he should be notified of the change of officers. This view explains the absence of Mr. Baiz's name from the official list as a diplomatic officer, and the fact that he was never presented. The

date of presentment marks the date of investiture and recognition of diplomatic functions. "*Charges d'affaires ad interim*," says Martens, "are presented as such." Guide Diplomatique, (5th Ed.) 61, § 16. It is to be presumed that the reason why Mr. Baiz was not presented as *charge d'affaires ad interim* was because it was not intended to make him such an officer. Had it been intended to make him *charge d'affaires ad interim*, his own government would naturally have addressed him by that title, and Mr. Baiz would have been entitled to draw pay as such an officer. The absence of these circumstances also indicates the contrary intention.

The fact that Mr. Baiz was an American citizen is also against the defendant's contention. It is a mooted question whether a citizen is ever entitled to such immunity. He is not entitled to it unless jurisdiction over him is waived by accepting him as a foreign minister. No such waiver ought to be inferred upon a mere implication, where the intent to appoint the person to any diplomatic office is itself in doubt, through the minor character of the functions to be exercised, and the failure to designate him by any title of office.

The evidence is insufficient to show that Mr. Baiz was intended to represent the sovereignty of Guatemala, Salvador, and Honduras in a general diplomatic capacity. The original letters of Mr. Lainfiesta and Mr. Bayard seem to contemplate, as I have said, that Mr. Baiz should serve only as a mere channel of communication during the absence of any diplomatic representative. If diplomatic officers do perform this function, it is among the smallest of their duties. An American citizen and consul of a foreign state, invested with this function, and no more, and without any diplomatic title of office, I cannot regard as invested with "the principal diplomatic functions," (section 4130,) or as entitled to the immunities of an accredited diplomatic minister. The motion is denied.